Jasen, J.
(dissenting). Today’s holding that the police do not have a right to approach a citizen on a public street to make a simple inquiry deals a serious and unjustifiable blow to effective law enforcement.
In the late morning of March 10,1981, Officer Johnson of the Rochester Police Force was on duty and parked in an unmarked police vehicle in the Com Hill section of the City. The officer was given specific orders to make every effort to observe criminal activity since the Corn Hill section had been plagued by numerous daytime burglaries, including burglaries reported as occurring several days earlier that week. The record discloses that such daytime burglaries in the Corn Hill section “had occurred by entry from back alley areas”, and this fact was known to the officer on March 10.
*620 Officer Johnson observed defendant “going through back allies”[1] and walking in the Corn Hill area “looking at houses”. The officer personally knew the defendant as he had arrested the defendant for burglaries on at least six prior occasions. Officer Johnson transmitted a radio call to Officer Klotzbach and indicated that a field interview should be administered to defendant. Officer Klotzbach, in pursuance of the request of Officer Johnson, called to the defendant and asked defendant to approach him. Officer Klotzbach asked the defendant for identification, which defendant produced, and whether he was armed. At this time, acting totally without solicitation, defendant voluntarily produced nine envelopes from under his clothing and stated that he had found the envelopes in an alley in the neighborhood. As it turned out, the envelopes contained stolen hockey tickets for Rochester Amerks games, and defendant later confessed to the theft from the box office. Thereafter, defendant pleaded guilty to one count of burglary in the third degree following a denial of his motion to suppress.
Both courts below, in refusing to suppress evidence of the crimes of burglary and larceny, held thát the conduct of the police in approaching defendant to make a brief limited inquiry was proper under the circumstances.[2] The majority in this court, however, in reversing the judgment of conviction and dismissing *621 the indictment, hold the police conduct “unlawful” and, in effect, violative of defendant’s rights under the Fourth Amendment of the United States Constitution. I cannot agree and, therefore, respectfully dissent and vote to affirm the order of the Appellate Division.
What was unlawful with the police conduct here? The Fourth Amendment clothes the citizen with the right to be secure against “unreasonable searches and seizures”. What search or seizure was conducted here? Certainly there was no search of the defendant. No move was made to search defendant’s person or possessions. The police officer exited from his car and asked defendant to identify himself, which he did, and whether he was armed. Defendant responded by reaching “under his shirt and came out with a wad of envelopes saying, T find these in the alley behind me and was wondering what to do with them’.”
Nor was there a “seizure” of defendant within the meaning of the Fourth Amendment. No claim is made that the police, in exercising their common-law right to inquire, acted in a threatening or abusive manner, nor did they say anything to indicate that defendant was not free to walk away during the inquiry. (See People v Carrasquillo, 54 NY2d 248, 252-253.) It is established that a seizure, for Fourth Amendment purposes, has occurred only when a “ ‘reasonable person would have believed that he was not free to leave.’ ” (Florida v Royer, 460 US 491,502 [plurality opn of Justices White, Marshall, Powell and Stevens] [Blackmun, J., dissenting, 460 US, at p 513] [Rehnquist, J., dissenting, with whom Burger, Ch. J., and O’Connor, J., join, 460 US, at p 523, n 3.) Since there was no detention, nor any claim of detention, there has been no seizure within the meaning of the Fourth Amendment and no constitutional rights have been infringed.
Nor does it involve a stop and frisk situation, or a case where the police officer approached the defendant with a gun drawn and ordered the defendant to freeze and not move. All that happened was that, as stated before, the police officer made a limited inquiry of the defendant when he voluntarily produced the stolen hockey game tickets from under his shirt. While reasonable suspicion that a particular person “was engaged in or about to be engaged in criminal conduct” is required before the police may stop and frisk that individual (CPL 140.50, subd 1; Terry v Ohio, 392 US 1; People v De Bour, 40 NY2d 210, at p 223), that standard is not applied when a police officer is merely making an inquiry of an individual without imposing any restraint upon him (People v De Bour, supra, at p 223).
*622 Law enforcement officers do not violate the Fourth Amendment by “merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions”. (Florida v Royer, 460 US 491, 497, supra [emphasis added] [citations omitted]; Florida v Rodriguez, 469 US_,_, 105 S Ct 308, 310-311.) As Justice White aptly noted in his concurring opinion in Terry v Ohio (392 US 1, 34, supra), “[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way * * * Of course, the person stopped is not obligated to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.” (See, also, United States v Mendenhall, 446 US 544.)
Recognizing, as we must, that a police officer has the right to address questions to members of the public in the course of his duties, and that the purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, what constitutional impropriety occurred here? The Constitution bars unreasonable “seizures” but does not bar police intrusions to inquire that fall short of a “seizure”, such as we have here. Based upon the objective definition of a “seizure” — whether a reasonable person would have believed that he was not free to go — - the unobtrusive contact between the defendant and the police officer does not rise to the level of a seizure so as to warrant Fourth Amendment scrutiny. This view finds added support in the opinion of Justice Stewart in United States v Mendenhall (446 US 544, 553-554, supra), cited and relied upon in Florida v Royer (460 US 491, 497-498, supra), where he noted that “a person is ‘seized’ only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards.” The fact that the officer identifies himself as a police officer, without more, does not convert the encounter into a seizure requiring some level of objective justification. (Florida v Royer, 460 US 491, 497-498, supra.) As long as the person to whom the question has been put remains free to disregard the question and walk away, there has been no intrusion upon that person’s liberty or privacy as would under the Constitution require some particularized justification, such as “founded suspicion”. (Florida v Royer, 460 US 491, 497- *623 498, supra.) Thus, in the absence of arbitrary and oppressive conduct, inoffensive inquiry by a police officer to a member of the public should not, as the majority seem to hold, amount to a seizure of that person. (People v Samuels, 50 NY2d 1035, 1037, cert den 449 US 984.)
I would hold, under the circumstances present here, that the police-initiated inqpiry need not be justified upon a “founded suspicion that [defendant] was engaged in or about to be engaged in criminal conduct”, as the majority would require, prior to the point where a seizure within the meaning of the Constitution occurs, or, at all, where the suspect revealed voluntarily the incriminating evidence sought to be suppressed in a spirit of cooperation, and before seizure of any kind. (See Preiser, Confrontations Initiated By The Police On Less Than Probable Cause, 45 Alb L Rev 57, 66.)
To hold otherwise defies both constitutional principles and common sense in depriving a law enforcement officer of the common-law right to approach a citizen on a public street, in the course of his duties, to make a simple inquiry. Not only is such conduct of the police reasonable in every respect, it is often, as it was in this case, the essence of good police work. The majority, in suppressing incriminating evidence obtained during such inquiry of the admittedly guilty burglar in finding merit in a constitutional claim where none exists, will serve only to impede effective law enforcement.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur in memorandum; Judge Jasen dissents and votes to affirm in an opinion.
Order reversed, etc.

. Officer Klotzbach testified that Officer Johnson had informed him that defendant was “going through back allies”. Such testimony was not objected to in a timely fashion nor stricken from the record.

. The evidentiary record in the trial court is adequate to permit consideration of the question of the legitimacy of the inquiry directed by the officer to the defendant. The correctness of the legal characterization of the facts appearing in the record was a matter for the Appellate Division to determine. While the parties at the suppression hearing utilized a diversity of phraseology to characterize the initial contact between the police and the defendant, the record supports the view that the purpose of the officer’s action was to inquire, as correctly noted by the Appellate Division.
At the suppression hearing, counsel for the defendant argued that there was no “credible basis” upon which to stop defendant. The “credible basis” test is that utilized to evaluate the legality of police exercise of the common-law right of inquiry. (People v Carrasquillo, 54 NY2d 248, 253.) Moreover, it is significant that counsel for the defendant never argued that constructive or actual restraint was utilized to detain defendant, despite the People’s unrebutted testimony that defendant was free to leave at any time. Thus, where defendant sought application of the standard utilized to assess the validity of an inquiry, and where all evidence points to an absence of detention, it is disingenuous for appellant to argue on appeal that what actually occurred was a “stop”. Indeed, that what had transpired was a simple inquiry was argued before this court by the People’s assertion, at page 10 of their brief, that “the officer who approached defendant had a right to inquire of appellant his name and, as in this case, whether he was armed”. (Citations omitted.)